UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

AA FLORIDA BRIDAL RETAIL, LLC,    Case No.: 17-18864-BKC-PGH

    Debtor.           Chapter 7

_____/

**TRUSTEE'S EMERGENCY MOTION FOR: 1) LIMITED AUTHORITY TO OPERATE THE BUSINESSES OF THE DEBTORS NUNC PRO TUNC TO JULY 14, 2017; AND 2) USE OF CASH COLLATERAL**

**EMERGENCY HEARING REQUESTED FOR JULY 20, 2017 AT 9:30 A.M.**

**Statement of Exigent Circumstances**

The Chapter 7 Trustee submits that a hearing on this Motion is necessary on an emergency basis to avoid irreparable harm to the Debtors' estates because the estates currently lack any liquidity for basic administrative expenses. If the relief requested is not granted on an emergency basis, the Trustee will be unable to adequately preserve the Debtors' business records and insurance.

Margaret J. Smith, the Chapter 7 Trustee (the "**Trustee**"), for the bankruptcy estates of AA Florida Bridal Retail Company, LLC ("**Alfred Angelo**") and Alfred Angelo – The Bride's Studio No. 3, Inc.; AA Bridal, LLC; AA Bridal Northeast, LLC; AA Bridal Midwest, LLC; AA Bridal Nebraska, LLC; Alfred Angelo Newco, Inc.; Alfred Angelo (Australia) Pty, Ltd.; Alfred Angelo Canada ULC; Alfred Angelo Investment China I; Alfred Angelo Investment China III; Alfred Angelo Investment Company, Limited (Hong Kong); BridesMart, LP; DJ Fashions, LLC; Hacienda Brides; PF International, Inc.; Piccione Fashions Ltd.; Piccione Fashions UK LTD; and Zhuhai Haiping Wedding DRESS Design LTD (collectively, the "**Affiliated Debtors**"), by and through undersigned counsel and pursuant to 11 U.S.C. §§ 363 and 721, respectfully requests that this Court enter an order (i) authorizing the Trustee to operate the businesses of the Debtors on a limited basis as set forth in more detail below *nunc pro tunc* to July 14, 2017, and (ii)

42324118;1
42362064;1

authorizing the Trustee to use cash collateral and granting adequate protection, if necessary, in connection therewith. In support of the Motion, the Trustee respectfully states as follows:

## BACKGROUND

1. On July 14, 2017 (the "Petition Date"), Alfred Angelo and the Affiliated Debtors filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

2. Margaret J. Smith is the duly appointed Chapter 7 Trustee of Alfred Angelo and the Affiliated Debtors' bankruptcy estates (jointly, the "Debtors").

3. All of the Debtors are affiliates as such term is defined under 11 U.S.C. Section 101(2) and several creditors allege secured claims against all of the Debtors' assets including, *inter alia*: (i) FSJC V, LLC ("FSJC"); and (ii) Financial Transaction Services, LLC ("FTC").

4. As of this date, the Debtors have not filed their Schedules or Statement of Financial Affairs so the Trustee does not yet have a complete picture of the Debtors' assets and liabilities.

5. Prior to the Petition Date, the Debtors operated as a wholesaler and retailer selling bridal dresses, bridal party dresses and related accessories (collectively "Inventory") through multiple retail store locations and wholesale operations.

6. The Debtors' business operations spanned over 60 retail stores in multiple jurisdictions throughout the United States, as well as various wholesale operations in Europe and Australia.

7. On the retail side of the business, customers typically placed significant deposits that ranged from 50% to 80% of the retail price of the product to purchase Inventory through credit card transactions with the balance of the payment due when the Inventory was delivered

and fitted through alterations, if necessary.

8. The Trustee is still investigating the financial affairs of the Debtors, but it appears that the Debtors utilized manufacturing facilities in China which would manufacture the Inventory and then ship the Inventory through the Debtors' shipping and storage agents either to the United States, Europe or Australia and then for retail purposes, such Inventory would be delivered to various retail store locations where the Inventory was purchased for ultimate delivery to the customer.

9. Immediately prior to the Petition Date, the Debtors terminated each and every employee, but apparently insured that every employee was paid outstanding wages up to the date of termination. Thus, the Debtor no longer has employees to assist with the Debtors' business operations.

10. The Trustee understands that prior to the Petition Date there remain thousands of unfulfilled orders wherein Debtors' customers had purchased Inventory and placed significant deposits in advance of delivery of the Inventory when the balance of the purchase price was to be paid. Due to the fact that the Debtors no longer have any employees and there is significant costs associated with obtaining and shipping the Inventory, many of the Debtors' customers are in jeopardy of not having their orders fulfilled.

11. In the event the orders are not filled, the Debtors and the Debtors' Estates face significant charge back exposure both to customers and to FTC on any credit card transactions.

12. Subsequent to the Petition Date, Debtors' counsel has communicated with several affected customers and has attempted to coordinate the delivery of completed orders where orders have been fully paid prior to the Petition Date and delivery has been made possible by

former employees of the Debtors.[1]

13. To minimize the exposure to the Estates, the Trustee is evaluating whether the Estates can successfully negotiate deals with its lenders, shippers, warehousemen and freight forwarders to determine whether the Estates can continue to fulfill delivery obligations to customers; however, at this very early stage of the cases, the Trustee does not yet have the resources or labor necessary to fulfill most of the orders.  The Trustee is also considering other alternatives to administer the Inventory for the benefit of the Estates, but the analysis is ongoing and no final decision has been made on the disposition of the Inventory.

14. In order to operate for a limited purpose and continue to evaluate the best way to administer these cases, the Trustee needs to utilize its assets, which include, in addition to the Inventory, funds in various bank accounts and receivables all of which are potentially subject to liens in favor of FTC and FSJC and all of which constitute the Debtors' "Cash Collateral".

15. Attached hereto as Exhibit "A" is a proposed operating budget (the "Initial Budget") which has been approved by FTC and FSJC.

## RELIEF REQUESTED

16. The Trustee seeks authority pursuant to 11 U.S.C. §§ 721 to operate the business of the Debtors on a limited basis to conduct the Business Operations (defined below) and to pay the expenses identified on the Initial Budget.

### A. Business Operations

17. In order to properly and orderly liquidate the assets of the Debtors and fulfill as many orders as possible to avoid the chargeback exposure, the Trustee requests authority to

---

[1] Counsel for the Debtors has consented to continue the coordination of fully paid completed orders during the 2-week interim operations contemplated in the relief sought in this Motion **where possible** to effectuate the delivery.  However, there are no guarantees that affected customers will receive their merchandise despite the efforts of the Trustee, her counsel and Debtors' counsel.

operate the business of the Debtors to, among other things, perform the following business operations (collectively, the "Business Operations") :

    a. Moving the Debtors' personal property and business records from the Debtors' principal corporate office to the Debtor's warehouse in South Florida or to a third party storage facility;

    b. Preserving all insurance necessary for limited operations of the Debtors;

    c. Preserving the Debtors' physical and electronic business records;

    d. Collect receivables;

    e. Redesign and update the Debtors' website to provide notice to all interested parties relating to the Bankruptcy Cases and Debtors' wind down operations;

    f. Retaining and compensating employees to assist the Trustee in mitigating chargeback claims against the Debtors' estates; and

    g. Perform other ordinary course operations of the Debtors that the Trustee deems in the best interest of creditors exercising her business judgment to provide for maximizing the value of the bankruptcy estate.

Notwithstanding the foregoing, the Trustee does not intend to accept new orders or seek to sell the operations of the Debtors as a going concern or the Inventory through a bulk sale without further Order of this Court.

    18. Based on the above, the Trustee believes that the request is necessary under the circumstances.

### B. Consensual Use of Cash Collateral

19. The Trustee has consulted with FTC and FSJC which maintain and assert liens on the Cash Collateral. Both FTC and FSJC have consented to the Trustee's use of cash in its bank accounts which could constitute Cash Collateral to fund the Initial Budget attached hereto as Exhibit "A".

20. Subject to certain conditions, a bankruptcy court may authorize the use of cash collateral by a trustee. 11 U.S.C. § 363.

21. Under 11 U.S.C. § 363(c)(2)[2], the Trustee may use Cash Collateral if it has authority to operate the Debtors' business and the parties who have an interest in the Cash Collateral consent.

22. In this case, the Trustee's requested use of Cash Collateral will not adversely impact any other party and thus no harm will result from the granting of the relief requested herein. Specifically, both FTC and FSJC have consented to the Trustee's use of cash collateral consisting of any cash on hand in accordance with the Interim Budget.

23. The Debtors' bankruptcy estates will be irreparably harmed if use of cash collateral is not authorized on an interim and emergency basis to fund the limited operations described above. Accordingly, it is appropriate for the Court to enter an order authorizing the use of Cash Collateral by the Trustee in accordance with the terms of the Interim Budget.

---

[2] 11 U.S.C. § 363(c)(2) provides:
(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.
(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
(A) each entity that has an interest in such cash collateral consents; or
(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

6

24. The terms of the proposed use of the Cash Collateral are fair and reasonable under the circumstances and reflect the Trustee's exercise of prudent business judgment.

C. **Interim Approval of Use of Cash Collateral**

25. Fed. R. Bankr. P. 4001(b), (c) and (d) provide that a final hearing on a motion to use cash collateral, obtain credit and approval of agreements concerning same may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court may conduct a preliminary expedited hearing on the Motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. The Trustee is seeking such interim relief through this Motion.

26. The Trustee believes that the relief sought in this Motion is in the best interest of the Debtors, the estates, and creditors, and that the entry of an Interim Order will allow for the continued operation of the Debtors' existing business for the purposes set forth above.

27. Counsel for the Trustee and counsel for FTC are still negotiating the proposed form of Order to govern the relief sough in this Motion. Undersigned counsel expects to finalize the proposed form of Order prior to the hearing.

**WHEREFORE**, the Trustee respectfully requests that this court enter an order, in a form attached hereto: (i) authorizing the Trustee to operate the Debtor's business to perform the Business Operations, in the Trustee's business judgment, to preserve value for the Debtor's estate and to pay the Employee Obligations *nunc pro tunc* to July 14, 2017; (ii) authorizing the

use of cash collateral on an interim basis, (iii) scheduling a hearing to consider final approval of the use of cash collateral sought herein; and (iv) granting such other and further relief as is just and proper.

Dated: July 19, 2017

Respectfully submitted,

AKERMAN LLP

By: /s/ D. Brett Marks
D. Brett Marks
Florida Bar No. 099635
brett.marks@akerman.com
Eyal Berger
Florida Bar No.: 011069
eyal.berger@akerman.com
350 East Las Olas Blvd., Suite 1600
Ft. Lauderdale, FL 33301
Telephone: (954) 712- 6071
Facsimile: (954) 847-5374

*Proposed Attorneys for Margaret Smith, Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 19, 2017, a true and correct copy of the foregoing Motion was furnished via CM/ECF or via First Class U.S. Mail to all parties listed on the attached service list.

/s/ D. Brett Marks
Attorney

42324118;1
42362064;1

## SERVICE LIST

**17-18864-PGH Notice will be electronically mailed to:**

Eyal Berger, Esq. on behalf of Trustee Margaret J. Smith
eyal.berger@akerman.com, jeanette.martinez@akerman.com


Ronald E Gold on behalf of Creditor Washington Prime Group Inc.
rgold@fbtlaw.com

David B Marks on behalf of Trustee Margaret J. Smith
brett.marks@akerman.com, charlene.cerda@akerman.com


Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Patricia A Redmond on behalf of Debtor AA Florida Bridal Retail Company, LLC
predmond@stearnsweaver.com,
jmartinez@stearnsweaver.com;rross@stearnsweaver.com;cgraver@stearnsweaver.com;sdaddese@akingump.com

James N Robinson on behalf of Creditor CardConnect, LLC
jrobinson@whitecase.com, jjordan@whitecase.com;avenes@whitecase.com

Margaret J. Smith
msmith@mjstrustee.com,   FL32@ecfcbis.com;msams@mjstrustee.com;mjs@trustesolutions.net

Charles M Tatelbaum on behalf of Creditor Czech Asset Management, LP
cmt@trippscott.com, iah@trippscott.com;cvp@trippscott.com

42324118;1
42362064;1