| | |
|---|---|
| N RE: | Case No. 17-18864-MAM |
| | Chapter 7 |
| AA FLORIDA BRIDAL RETAIL | (Jointly Administered) |
| COMPANY, LLC, *et al.,* | |
| Debtors. | |
| _____/ | |

**MOTION FOR ENTRY OF ORDER AUTHORIZING TRUSTEE TO: (I) SELL PERSONAL PROPERTY OF THE ESTATE AT PRIVATE SALE FREE AND CLEAR OF ALL CLAIMS, LIENS, AND ENCUMBRANCES; AND (II) RETURN BRIGADE CAPITAL DEPOSIT**

**(Hearing requested on a date prior to May 10, 2019)**

Margaret J. Smith, Chapter 7 Trustee (the "**Trustee**"), pursuant to 11 U.S.C. § 363(b) and (f), Federal Rules of Bankruptcy Procedure 6004, and Local Rules of S.D. FLA. 2002-1 and 6004-1, hereby moves the Court for an Order authorizing the sale of the estate's interest in the trademarks and domain names listed on Schedule 1 (the "**Purchased Assets**") of the attached Asset Purchased Agreement (the "**APA**")[1] to Gangnam, Inc. ("**Buyer**") for the purchase price of $50,000 free and clear of all liens, claims, and encumbrances (the "**Motion**"). In support of the Motion the Trustee proffers as follows:

### I. Jurisdiction

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A), (M); (N), and (0).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] A true and correct copy of the APA is attached to the Motion as **Exhibit "A."**

4. The basis for the relief requested is 11 U.S.C. §§ 363(b) and (f), and Federal Rules of Bankruptcy Procedure 2002 and 6004.

**II. Background**

5. On July 14, 2017, Alfred Angelo filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "**Petition Date**").

6. On the same date, the Affiliated Debtors each filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

7. Margaret J. Smith is the duly appointed Chapter 7 Trustee of Alfred Angelo and the Affiliated Debtors' bankruptcy estates (jointly, the "**Debtors**").

8. All of the Debtors are affiliates as such term is defined under 11 U.S.C. § 101(2) and several creditors allege secured claims against all of the Debtors' estates including, *inter alia*: (i) FSJC V, LLC ("**FSJC**"); and (ii) Financial Transaction Services, LLC d/b/a CardConnect ("**CardConnect**").

9. Prior to the Petition Date, the Debtors operated as a wholesaler and retailer selling bridal dresses, bridal party dresses and related accessories through multiple retail store locations and wholesale operations.

10. The Debtors' business operations spanned over 60 retail stores in multiple jurisdictions throughout the United States, as well as various wholesale operations in Europe and Australia.

11. On the retail side of the business, customers typically placed significant deposits that ranged from 50% to 80% of the retail price of the product to purchase Inventory through credit card transactions with the balance of the payment due when the Inventory was delivered and fitted through alterations, if necessary.

12. The Purchased Assets are fully encumbered by liens in favor of CardConnect.

13. Since the filing of the Bankruptcy Case, the Trustee and estate professionals have consulted with CardConnect in locating potential bidders for the Debtors' interest in the Purchased Assets to obtain the maximum benefit for the Debtors' estates.

14. The Trustee's efforts to sell the Purchased Assets yielded numerous expressions of interest for the Purchased Assets from various parties including a proposal by Vincent E. Piccione to purchase the Purchased Assets and other intellectual property for a payment of $15,000 and the waiver of a claim in the amount of $940,000 against Debtor Alfred Angelo- The Bride's No. 3, Inc., Case No. 17-18871 (the "**Piccione Offer**"). *See* ECF No. 281.

15. Prior to the sale hearing scheduled on the Piccione Offer, the Trustee received a proposal from Brigade Capital (the "**Brigade**") to acquire the Purchased Assets and additional personal property of the Estates for the purchase price of $35,000 after payment of a $15,000 good faith deposit (the "**Brigade Offer**"). The Trustee withdrew the motion to approve the Piccione Offer after receipt of the Brigade good faith deposit. *See* ECF No. 290. Ultimately, the Trustee and Brigade were unable to reach final agreement on the Brigade Offer due to a dispute related to the "as is, where is" nature of the proposed transaction. The Trustee and Brigade agreed that in the event the Trustee was able to convey the assets at a purchase price in excess of the Brigade Offer that the Trustee would return the Brigade Deposit upon receipt of the sale proceeds from any higher offer.

16. The Trustee has received a higher offer for the Purchased Assets from Buyer pursuant to the APA that seeks the conveyance of the Purchased Assets free and clear of all liens, claims, and encumbrances in exchange for:

AKERMAN LLP, LAS OLAS CENTRE II, SUITE 1600, 350 EAST LAS OLAS BOULEVARD, FORT LAUDERDALE, FL 33301-2999

a. cash payment in the aggregate amount of $50,000 funded with a $10,000 good faith deposit upon execution by the parties and the remaining $40,000 funded at closing; and

b. approval of the sale by this Court on or before May 10, 2019.

17. Importantly, the APA authorizes the Trustee to solicit higher and better offers for the Purchased Assets prior to any closing conditioned solely upon providing the Buyer a $5,000 termination fee and returning the Buyer's $10,000 good faith deposit.

**18. The Trustee has conferred with CardConnect and can aver to the Court that CardConnect consents to the sale of the Purchased Assets free and clear of its liens pursuant to the terms articulated in the APA.**

19. The Trustee has attempted to sell the Purchased Assets for in excess of 18 months and can represent to the Court that the APA represents the highest and best offer for the Purchased Assets. The Trustee does not anticipate any prospective bidders providing an offer to the Trustee that would exceed the consideration under the APA.

20. Accordingly, the Trustee asserts that disposition of the Purchased Assets pursuant to the APA represents the most cost efficient manner for the Estate to liquidate its interest in the Purchased Assets. If the APA is not approved, the Trustee asserts that she will likely be compelled to abandon the Estates' interest in the Purchased Assets as there does not appear to be any viable alternative offers for the Purchased Assets.

**III. Relief Requested**

21. By this Motion, the Trustee seeks the entry of an Order approving the sale of the Estates' interests in the Purchased Assets pursuant to the terms of the APA free and clear of all liens, claims, and encumbrances.

22. The Debtors' Estates hold fee simple title to the Purchased Assets by virtue of 11 U.S.C. § 541.

23. The Trustee seeks the Court's authority to sell the Property pursuant to 11 U.S.C. § 363(b) and 363(f).

24. Pursuant to Section 363(b) of the Bankruptcy Code, the Trustee, after notice and hearing, may use, sell, or lease property of the Debtor's estate other than in the ordinary course of business. 11 U.S.C. §363.

25. The Court should approve the sale if the Trustee can demonstrate a sound business justification for the sale and if the sale process is fair, open and reasonable. *See Official Comm. Of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.),* 973 F.2d 141, 143 (2d Cir. 1992); *see also In re Sarah's Tent, LLC,* 396 B.R. 571, 573 (Bankr. S.D. Fla. 2008).

23. Further, pursuant to 363(f)(2), the Trustee is authorized to sell property free and clear of any interest in such property if the entity holding said lien consents to the sale free and clear. As stated herein, CardConnect consents to the sale of the Purchased Assets subject to the terms of the APA.

24. Bankruptcy Rule 6004(f) contemplates sales outside of the ordinary course of business made by private sale. The offer represented by the APA represents the highest, best, and sole viable offer for the Purchased Assets sought to be conveyed by the Trustee.

25. The closing shall occur as soon as practicable following the entry of an Order approving this Motion.

26. To the best of the Trustee's knowledge, information and belief, there will be no negative tax consequences associated with this sale.

27. Because it appears to the Trustee that this transaction provides a benefit to all parties involved, the Trustee requests an Order approving this sale.

28. Finally, the Trustee further requests that the fourteen (14) day stay imposed by Bankr. R. 6004(h) be waived.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order (i) authorizing the sale of the Purchased Assets described herein free and clear of all claims, liens, and encumbrances; (ii) waiving fourteen (14) day stay imposed by Bankr. R. 6004(h); (iii) authorizing the Trustee to return the $15,000 good faith deposit to Brigade Capital upon receipt of the sale proceeds from the APA; and (iv) granting the Trustee any other relief to which she may be entitled.

Date: April 11, 2019

Respectfully submitted,

By: /s/ *Eyal Berger*
Eyal Berger, Esq.
Florida Bar No. 11069
**AKERMAN LLP**
Las Olas Centre II, Suite 1600
350 East Las Olas Blvd.
Fort Lauderdale, Florida 33301
Tel: 954-463-2700
Fax: 954-463-2224
eyal.berger@akerman.com

*Counsel to Trustee, Margaret J. Smith*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on April 11, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case.

    /s/ *Eyal Berg*er
Attorney

**EXHIBIT "A"**

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement (the "**APA**" or the "**Agreement**") is entered into on April 10, 2019, between Gangnam Inc. (the "**Buyer**"), whose address is Palm Grove House, P.O. Box 438, Road Town, Tortola, British Virgin Islands and **Margaret Smith, Chapter 7 Trustee** for the bankruptcy matters referenced herein and filed as defined herein (the "**Seller**"), whose address is c/o Akerman LLP, 350 East Las Olas Boulevard, Suite 1600, Fort Lauderdale, FL 33301.

Seller is the duly appointed Chapter 7 Trustee appointed in the Chapter 7 bankruptcy matters listed herein, which cases were filed on July 14, 2017, Case No. 17-18871 ("**Bankruptcy**"). The Bankruptcy cases have been jointly administered (all cases for all Debtors will be referred to as "**Debtors Cases**") pursuant to an Order of this Court dated July 19, 2017 with lead case #17-18864. The Debtors in Debtors Cases are: AA Florida Bridal Retail Company, LLC (17-18864); Alfred Angelo - The Bride's Studio (17-18871); AA Bridal Midwest, LLC (17-18873); AA Bridal Northeast, LLC (17-18874); AA Bridal, LLC (17-18877); BridesMart, LP (17-18879); Hacienda Brides (17-18881); DJ Fashions, LLC (17-18882); AA Bridal Nebraska, LLC (1718883); Alfred Angelo (Australia) Ptd, Ltd. (17-18884); Alfred Angelo Canada UCL (1718886); Alfred Angelo Investment China I (17-18887); Alfred Angelo Investment China III (1718888); PF International, Inc. (17-18891); Piccione Fashions Ltd. (17-18892); Piccione Fashions UK LTD (17-18894); Zhuhai Haiping Wedding DRESS Design LTD (17-18896); Alfred Angelo Investment Company, Limited (Hong Kong) (17-18898); Alfred Angelo Newco, Inc. (17-18900) (all Debtors will be referred to as "**Debtors**").

The Seller has agreed to sell and the Buyer has agreed to purchase all rights, title and interest in the Purchased Assets (as defined below):

    a.    Tradenames/Trademarks of "Alfred Angelo" and any other trademarks and tradenames owned by the Debtors as of the date of this Agreement wherever located, whether registered or not, including without limitation the trademarks set out in Part A of Schedule 1 attached hereto; and

    b.    The domain names alfredangelo.com and any other domain names owned by the Debtors as of the date of this Agreement, including without limitation the domain names set out in Part B of Schedule 1 attached hereto (collectively the tradenames/trademarks and domain names shall be referred to as "**Purchased Assets**").

Therefore, the parties agree as follows:

    1.    <u>Sale of the Purchased Asset.</u> Subject to the provisions set forth in this Agreement, as of the date that the closing of transactions contemplated by this Agreement has been consummated which shall take place upon the satisfaction of the condition set forth in Section 4 (the "**Effective Time**"), the Seller hereby sells, conveys, assigns, and transfers to the Buyer the Purchased Assets free and clear of any and all liens and encumbrances, and the Buyer hereby accepts the sale, conveyance, assignment, and transfer of the Purchased Assets. Seller shall provide to Buyer, upon the execution of this Agreement, written confirmation that there are no claims, liens or encumbrances of any kind on the Purchased Assets and/or that any pre-existing liens, claims or encumbrances on the Purchased Assets have been waived, discharged or satisfied.

2. No Assumption of Liabilities. The Buyer does not assume any obligation or liability of the Seller, and Seller will continue to be liable for any and all liabilities.

3. Purchase Price. The purchase price is $50,000.00 (the "**Purchase Price**"). The Buyer shall pay the Purchase Price as follows:

    (1) $10,000.00 deposit, upon execution of this APA.

    (2) $40,000.00 will be paid at the Closing by wire transfer.

4. Bankruptcy Court Approval. This Agreement is subject to the Seller obtaining an order approving the sale of the assets free and clear of all liens, claims, and encumbrances on or before May 10, 2019 ("**Order**").

5. Termination. This Agreement may be terminated and the transactions contemplated hereby may be abandoned at any time prior to the Effective Time:

    (1) by mutual written consent of Parent and the Company;

    (2) by Buyer if the Order is not obtained on or before May 10, 2019;

    (3) by Seller in order to enter into a definitive written agreement with respect to a bid from a third party that offers higher price for the Purchased Assets (the "**Superior Bid**"), provided that Seller pays the fee due under Section 6 prior to or concurrently with such termination.

The Seller shall return the deposit to the Buyer upon termination of this Agreement.

6. Fees and Expenses. Except as otherwise provided in this Section 6, all fees and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such fees or expenses. If this Agreement is terminated (i) by Buyer pursuant to Section 5(2) and at any time after the date of this Agreement and prior to the termination under Section 5(2), an Superior Bid shall have been submitted to Seller and not withdrawn prior to such termination under Section 5(2) or (ii) by Seller pursuant to Section 5(3), then Seller shall pay Buyer a termination fee of $5,000 (the "**Termination Fee**") and reimburse fees and expenses actually incurred by Buyer in connection with this Agreement.

7. Match Right. In the event that Seller receives a Superior Bid, it shall promptly, in any event within 48 hours, notify Buyer in writing the terms and conditions of such Superior Bid (including the identity of the third party making the Superior Bid). Buyer shall have the right to make such adjustments in the terms and conditions of this Agreement within three Business Days after receipt of the written notice so that such Superior Bid ceases to constitute a Superior Bid. Any material amendment to the terms of a Superior Bid shall require a new written notice to Buyer and Seller shall be required to comply again with the requirements of this Section 7. For purposes of this Agreement, "**Business Day**" means any day other than a Saturday, a Sunday or a day on

which banks in New York, New York, Cayman Island or Hong Kong are authorized or required by applicable law to be closed.

8. <u>Survival.</u> Except as otherwise provided in this APA, the representations and promises of the parties contained in this APA will survive (and not be affected in any respect by) the Effective Time for the applicable statute of limitations as well as any investigation conducted by any party and any information which any party may receive.

9. <u>Further Actions.</u> At any time and from time to time after the date of this APA: (1) the Seller shall execute and deliver or cause to be executed and delivered to the Buyer such other instruments and take such other action, all as the Buyer may reasonably request, in order to carry out the intent and purpose of this Agreement; and (2) the Buyer shall execute and deliver or cause to be executed and delivered to the Seller such other instruments and take such other action, all as the Seller may reasonably request, in order to carry out the intent and purpose of this Agreement.

10. <u>Governing Law; Venue.</u> This Agreement and the transactions contemplated hereby will be construed in accordance with and governed by the internal laws (without reference to choice or conflict of laws principles) of the State of Florida. Any suit, action, or other proceeding brought against any of the parties to this Agreement or any dispute arising out of this Agreement or the transactions contemplated hereby must be brought in the Court in which the Bankruptcy was filed. If the Bankruptcy is closed, then it may proceed either in the courts sitting in Broward County, Florida, or in the United States District Court for the Southern District of Florida and by its execution and delivery of this Agreement, each party accepts the jurisdiction of such courts and waives any objections based on personal jurisdiction or venue.

11. <u>Assignment.</u> No party may assign either this Agreement or any of its rights, interests, or obligations hereunder without the prior written approval of each other party, except that the Buyer may assign any or all of its rights under this Agreement, in whole or in part, without obtaining the consent or approval of any other party, (1) to any current or future affiliate of the Buyer, (2) to any entity into which the Buyer may be merged or consolidated, (3) in connection with any acquisition, restructuring, merger, conversion, or consolidation to which the Buyer may be a party, or (4) to a lender to the Buyer or its affiliates as collateral security for current or future obligations owed by the Buyer or its affiliates to the lender.

12. <u>Notices.</u> All notices and other communications under this Agreement must be in writing and given by first class mail, return receipt requested, nationally recognized overnight delivery service, such as Federal Express, or personal delivery against receipt to the party to whom it is given, in each case, at the party's address set forth in this Section 12 or such other address as the party may hereafter specify by notice to the other parties given in accordance with this section. Any such notice or other communication will be deemed to have been given as of the date the applicable delivery receipt for such communication is executed as received or in the case of mail, three days after it is mailed.

If to the Seller:

Margaret Smith, Chapter 7 Trustee

       c/o Akerman LLP
       350 East Las Olas Blvd., Suite 1600
       Fort Lauderdale, FL 33301

If to the Buyer:

       Gangnam Inc.
       Palm Grove House, P.O. Box 438
       Road Town, Tortola, British Virgin Islands

       13.       <u>Miscellaneous.</u> This Agreement contains the entire agreement between the parties with respect to the subject matter hereof and all prior negotiations, writings, and understandings relating to the subject matter of this agreement are merged in and are superseded and canceled by, this Agreement. This APA may not be modified or amended except by a writing signed by the parties. This APA is not intended to confer upon any person or entity not a party (or their successors and permitted assigns) any rights or remedies hereunder. This APA may be signed in any number of counterparts, each of which will be an original with the same effect as if the signatures were upon the same instrument, and it may be signed electronically. The captions in this APA are included for convenience of reference only and will be ignored in the construction or interpretation hereof. If any date provided for in this APA falls on a day which is not a business day, the date provided for will be deemed to refer to the next business day. Any provision in this Agreement that is held to be invalid, illegal, or unenforceable in any respect by a court of competent jurisdiction will be ineffective only to the extent of such invalidity, illegality, or unenforceability without affecting in any way the remaining provisions hereof; provided, however, that the parties will attempt in good faith to reform this APA in a manner consistent with the intent of any such ineffective provision for the purpose of carrying out such intent.

Each of the undersigned has caused this Agreement to be duly executed and delivered as of the date first written above.

**BUYER:**   Gangnam Inc.

By:_____

**SELLER:**   Margaret Smith, Chapter 7 Trustee

By: /s/ Margaret J. Smith

Each of the undersigned has caused this Agreement to be duly executed and delivered as of the date first written above.

**BUYER:**     Gangnam Inc.

By: ____徐萌_____

**SELLER:**   Margaret Smith, Chapter 7 Trustee

By: _____

45214771;1              *[Asset Purchase Agreement Signature Page]*

Schedule 1

**Part A: Trademarks**

|   | Reg. No. | Trademark | Category | Jurisdiction |
|---|----------|-----------|----------|--------------|
| 1 | 5038968 | SAPPHIRE BY ALFRED ANGELO | 25 | US |
| 2 | 5020231 | MODERN VINTAGE BY ALFRED ANGELO | 25 | US |
| 3 | 2558174 | (alfred angelo) | 18, 25, 26 | US |
| 4 | 2576377 | ALFRED ANGELO | 18 | US |
| 5 | 1365681 | ALFRED ANGELO | 25 | US |
| 6 | 22127196 | ALFRED ANGELO | 26 | PRC |
| 7 | 22084505 | ALFRED ANGELO | 25 | PRC |
| 8 | 22084351 | ALFRED ANGELO | 18 | PRC |
| 9 | 22083618 | ALFRED ANGELO | 14 | PRC |
| 10 | 16806541 | ALFRED ANGELO | 25 | PRC |

**Part B: Domain Names**

1. alfredangelo.com
2. alfredangelobridal.com
3. algredangelobridal.co.uk
4. alfredangelobridal.ca
5. bridesmart.com